The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Derek Lavan JACKSON, Defendant–Appellant.

No. 98CA2496.

Colorado Court of Appeals, Div. III.

May 25, 2000.

Rehearing Denied July 27, 2000.

Certiorari Granted Nov. 20, 2000.

and § 24–51–1105, C.R.S.1999

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General,

Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Cynthia Sheehan, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Derek Lavan Jackson, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a controlled substance. We reverse and remand for further proceedings.

On October 24, 1997, at approximately 1:30 a.m., defendant was a passenger in a car driven by an acquaintance. A police officer patrolling the neighborhood stopped the car because the driver was operating it without headlights. The officer then requested the driver's license, registration, and insurance; the driver complied with this request. The officer then requested defendant's identification, and defendant also complied.

Upon returning to his patrol car, the officer ran a warrant check on both defendant and the driver, and after discovering that defendant had three outstanding traffic warrants, arrested him. Approximately fifteen minutes elapsed between the time of the stop and defendant's arrest. During the booking procedure, the police found two small pieces of crack cocaine weighing .098 grams in defendant's jacket. Defendant was later charged with possession of a controlled substance.

Prior to trial, defendant moved to suppress the cocaine seized from him as well as statements he had made to officers after his arrest. The trial court denied this motion, and defendant was convicted of the charge.

Defendant asserts the trial court erred in denying his motion to suppress. More specifically, he contends that he was subjected to an illegal search and seizure because the officer obtained his identification without any basis to believe he was engaged in criminal activity and then arrested him based on the outstanding traffic warrants. We agree.

The issues presented in this case were left unresolved by the supreme court in *People v. H.J.*, 931 P.2d 1177 (Colo.1997). Those issues are: (1) whether a police officer must always have a reasonable suspicion of criminal activity to request identification from a passenger in a vehicle, and (2) whether under some circumstances such a request would be viewed as a consensual interview.

We conclude that, in the circumstances presented here, the officer's request was not a consensual interview, and the officer must have had a reasonable suspicion of criminal activity to request defendant's identification. Moreover, there was an investigatory stop of the driver, while the encounter with defendant constituted a seizure in violation of his Fourth Amendment rights. Accordingly, his motion to suppress should have been granted, and his conviction is therefore reversed.

■ The Fourth Amendment provides that people shall "be secure in their persons ... against unreasonable searches and seizures" by law enforcement officers. U.S. Const. amend. IV. Not all police-citizen encounters are "seizures" of persons; a seizure only occurs when an officer, by means of physical force or show of authority, restrains an individual's liberty. *People v. Paynter*, 955 P.2d 68 (Colo.1998).

■ The supreme court has recognized three categories of police-citizen encounters: (1) arrests, (2) investigatory stops, and (3) consensual interviews. Arrests and investigatory stops are seizures as defined by case law, and therefore implicate constitutional protections. An arrest must be justified by probable cause, and an investigatory stop must be justified by a reasonable and articulable suspicion of criminal activity. *People v. Paynter, supra.*

■ A consensual interview occurs when a police officer seeks the voluntary cooperation of a person by asking non-coercive questions. A consensual interview does not implicate constitutional protections because during such an interview a citizen may leave at any time or may ignore a police officer's instructions. *People v. Paynter, supra.*

■ There are no bright-line tests for courts to follow in reviewing asserted Fourth Amendment violations. The facts of a case must be evaluated on a case-by-case basis to determine whether they warranted an intru-

sion and whether the scope of the intrusion was reasonably related to the circumstances that justified the interference. *People v. H.J., supra.* Therefore, when determining whether a seizure has occurred, a court must consider the totality of the circumstances surrounding the incident and decide whether a citizen reasonably believed he or she was free to leave. *People v. Paynter, supra.* "No single fact is dispositive under the totality of the circumstances test," and several factors differentiate the categories of encounters. *United States v. McSwain,* 29 F.3d 558, 562 (10th Cir.1994).

For instance, factors indicating an investigatory stop include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *People v. H.J., supra,* 931 P.2d at 1181. A court may conclude officers displayed their authority if they activated the siren and overhead lights of their patrol car during the stop. *See People v. Paynter, supra* (contact not an investigatory stop where car was already stopped before the officer approached, and the officer used his spotlight for illumination, but did not turn on his overhead lights or activate his siren). When a car is pulled over, it is reasonable for a person to conclude "he was not at liberty to ignore the police presence and go about his business." *United States v. McSwain, supra,* 29 F.3d at 562 n. 1; *see also People v. H.J., supra* (an officer pulling over a vehicle in transit is ordinarily conducting an investigatory stop as opposed to a consensual interview).

Furthermore, when a police officer retains a person's identification, that person, "as a general rule, will not reasonably feel free to terminate the encounter." *People v. Paynter, supra,* 955 P.2d at 75. However, an officer's request for identification alone does not amount to a seizure under the Fourth Amendment. *People v. Paynter, supra.*

In *Paynter,* the court recognized that events occurring after an individual voluntarily provides identification, including the length of time an officer retains the identifi-

cation, could transform a consensual encounter into an investigatory stop. *See People v. Sinclair,* 281 Ill.App.3d 131, 217 Ill.Dec. 283, 666 N.E.2d 1221 (1996) (officer's request for driver's license and instruction for person to remain in car constituted a seizure).

On the other hand, officers are not required to inform individuals that they are free to leave or have the right to ignore requests for identification. However, the failure to inform individuals of those rights is a factor courts may consider in determining the nature of the encounter. *People v. Paynter, supra.*

Here, the trial court concluded that the traffic stop and request for defendant's identification were part of a consensual interview rather than an investigatory stop. It is undisputed that (1) the officer legitimately stopped the driver of the car in which defendant was a passenger; (2) the driver produced a valid license, registration, and insurance documents for the vehicle; (3) the officer then requested defendant's identification, and defendant complied; and (4) the officer then instructed defendant and the driver to wait in the vehicle.

However, based on the officer's testimony, the court determined that defendant was free to leave, and that any evidence obtained incident to the stop was admissible.

This case involves a mixed question of fact and law. The trial court's determination that defendant was free to leave is a finding of fact subject to a clearly erroneous standard of review. However, the trial court's determination that this was not an investigatory stop with regard to defendant is a question of law subject to *de novo* review. *People v. D.F.,* 933 P.2d 9 (Colo.1997).

The People rely on *People v. Paynter, supra,* and *People v. H.J., supra,* in which the supreme court held that an officer's request for identification from a vehicle passenger constituted a consensual interview. We agree with defendant that both cases are distinguishable.

In *People v. H.J., supra,* the court determined that an officer may request identification of passengers in a car stopped for a

traffic violation where there is a reasonable suspicion that the car has been stolen or that there is other criminal activity occurring or about to occur. The officer's reasonable suspicion in *H.J.* was supported by the fact that there, no one in the vehicle could produce registration papers for it. The court held that, based on that suspicious circumstance, the officers could reasonably infer that the passengers in the vehicle were involved in stealing the vehicle, and therefore, could be asked for identification.

The court, however, specifically declined to address whether a seizure occurs where the officer does not have probable cause or a reasonable suspicion that a passenger in a vehicle stopped for a traffic violation is engaged in criminal activity. Thus, the court's holding is not dispositive.

*People v. Paynter, supra* is likewise distinguishable. In *Paynter,* the officer approached a parked vehicle late at night, shining his spotlight on the vehicle for illumination. The officer did not turn on his vehicle's overhead lights before approaching the vehicle. After approaching the parked vehicle, the officer requested the identification of the occupants, asked what they were doing, and then checked whether they had outstanding warrants. The officer discovered that the passenger had an outstanding felony warrant. The passenger was then arrested and searched. During the search the police discovered marijuana on him.

The court held that the officer's contact with the defendant was a consensual interview, and thus the marijuana was admissible because: (1) the officer approached the vehicle without his weapon drawn, (2) he did not turn on the overhead lights or siren on his patrol car, (3) he asked for the defendant's identification in a non-coercive manner, and (4) the elapsed time between the officer's request for identification and the defendant's arrest was approximately five minutes. *People v. Paynter, supra.*

*Paynter* is very similar to *People v. Cascio,* 932 P.2d 1381 (Colo.1997). In *Cascio,* officers approached the defendants in a parked car without illuminating the overhead lights on the patrol car –a fact significant to the court's analysis. After obtaining consent to search the vehicle, the officers discovered cocaine and methamphetamine in the vehicle. At the trial for possession of controlled substances, the trial court granted defendant's request and suppressed the evidence obtained as a result of the search. The supreme court reversed the trial court's suppression, and specifically held that the officers' approach toward a parked car and questioning of its occupants, without more, constituted a consensual encounter. Thus, the evidence was admissible because it was incident to a consensual search.

The *Cascio* court, however, explicitly distinguished these types of encounters from traffic stops. The court stated that an officer's approach to a parked car is "analogous to a situation in which a police officer who is on foot approaches a pedestrian on a sidewalk rather than a full-blown traffic stop." *People v. Cascio, supra,* 932 P.2d at 1386.

■ The supreme court has also recognized that during traffic stops, officers cannot further detain citizens "when ... the purpose for which the investigatory stop was instituted has been accomplished and no other reasonable suspicion exists to support further investigation...." *People v. Redinger,* 906 P.2d 81, 85 (Colo.1995). *See also People v. Branch,* 295 Ill.App.3d 110, 229 Ill.Dec. 625, 692 N.E.2d 398 (1998)(holding that when an officer stops a vehicle for traffic violations, the officer does not have authority to request identification from a passenger if the officer has no reasonable suspicion that the passenger is engaged in criminal conduct).

■ Here, it is undisputed that this was a "full-blown traffic stop" where the officer had his siren blaring and overhead lights illuminated when he stopped the vehicle. The parties agree that this was an investigatory stop with respect to the driver. In addition, at the suppression hearing, the officer testified that when he requested defendant's identification he did not suspect that defendant was involved in any criminal activity. The officer testified that the driver's documents were valid, and therefore he did not suspect that the vehicle was stolen. The officer also testified that defendant did not make any furtive movements indicating that

he might have been involved in criminal activity. Furthermore, the officer testified that he did not suspect that either the driver or defendant was involved in criminal activity, other than the traffic violations, when he approached the car to request the driver's identification and registration.

Because there was no basis for the police officer to retain defendant's identification to run a warrant check, we conclude that, under the totality of the circumstances, the police lacked authority to request identification from defendant.

Based on *Cascio* and *Redinger*, once the driver produced a valid license and registration, and the officer did not suspect any criminal activity on the part of defendant, the officer should have allowed defendant to leave without requesting his identification.

The trial court concluded: (1) that, under the totality of the circumstances, the encounter here was a consensual interview and (2) that an individual in defendant's position would reasonably have felt free to leave after the police sought and obtained his identification. This conclusion was clearly erroneous. It is difficult for us to imagine that when a car is stopped by police for traffic violations, any reasonable passenger would conclude that, although the driver is not free to leave, he or she could ignore a police officer's request for identification and simply walk away. This is especially true where, as here, the officer retains the passenger's identification for approximately fifteen minutes.

Thus, we conclude that because the officer had no suspicion that defendant was engaged in criminal activity, the officer's encounter with defendant was not a consensual encounter, and a seizure occurred which violated defendant's Fourth Amendment rights. Accordingly, the cocaine found on defendant resulted from an unlawful search, and should have been suppressed. *See People v. Rodriguez*, 945 P.2d 1351 (Colo.1997) (evidence obtained as a result of illegal search or seizure is inadmissible under "fruit of the poisonous tree" doctrine).

Judgment reversed and cause remanded to the trial court for further proceedings consistent with this opinion.

Judge NEY, concurs.

Judge JONES, specially concurs.

Judge JONES specially concurring.

While I concur with the opinion in all respects, I write regarding the type of police-citizen encounter concerned here. I write specially because I believe the type of encounter must be ascertained before the court may conclude whether a seizure has occurred.

Based on the supreme court's reasoning in *People v. H.J.*, I believe that when an officer stops a vehicle's driver for a suspected traffic violation and does not have a reasonable suspicion that a passenger is engaged in criminal activity at the time of the stop, the stop of the passenger is not an arrest, investigatory stop, or consensual interview. Rather, in my view, this type of stop constitutes a fourth category of police-citizen encounter recognized but not described as such by the court in *H.J.*. Such a stop is a hybrid between an investigatory stop and a consensual interview. *People v. H.J., supra*, 931 P.2d at 1181 (recognizing that detaining passenger in a stopped vehicle is merely coincidental with detention of driver). This fourth category arises when detention of a vehicle passenger is incidental to a valid investigatory stop of the vehicle's driver.

I recognize this as a fourth category of police-citizen encounter because detention of a passenger in a vehicle stopped for traffic violations without reasonable suspicion that the passenger is engaged in criminal activity does not fit into any of the other three categories. It is not an arrest because in this situation, no one contends that the police have probable cause to believe a defendant has engaged in criminal activity. Similarly, it is not an investigatory stop with respect to the passenger because nobody asserts that the police have a reasonable suspicion of criminal activity by the passenger. It is also not a consensual interview because, as discussed in the majority's opinion, a reasonable passenger will not likely feel free to leave.

Because this fourth category is a hybrid, Fourth Amendment protections will not always be implicated when such an incidental

stop occurs. Whether the Fourth Amendment is implicated depends on the conduct of the officer and/or the passenger. If a passenger's furtive movements or behavior leads an officer to suspect that the passenger is engaged in criminal activity, the stop of the passenger becomes an investigatory stop and thus implicates the Fourth Amendment. If, however, the officer does not request the passenger's identification, the passenger has not been "seized," and the incidental stop will not implicate the Fourth Amendment. Other circumstances, such as merely requesting a passenger's name and date of birth, may or may not constitute a stop incidental to an investigatory stop implicating the Fourth Amendment, depending on the totality of the circumstances.

Thus, I conclude that under the circumstances presented here, the encounter with defendant constituted a stop incidental to the investigatory stop of the driver and also amounted to a seizure subject to Fourth Amendment protections.